# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MAINE

| | | |
|---|---|---|
| PACHAMAMA SANCTUARY, A NON-PROFIT LOCAL INDEPENDENT CHURCH, ON ITS OWN BEHALF AND ON BEHALF OF ITS MEMBERS; DEREK JANUSZEWSKI, INDIVIDUALLY AND AS SPIRITUAL LEADER OF THE CHURCH, | § § § § § § § § § | CASE NO. _____ |
| *Plaintiffs*, | § § | |
| v. | § § | |
| TODD BLANCHE, ATTORNEY GENERAL OF THE UNITED STATES; MARKWAYNE MULLIN, SECRETARY OF THE DEPARTMENT OF HOMELAND SECURITY; TERRANCE C. COLE, ADMINISTRATOR OF THE U.S. DRUG ENFORCEMENT ADMINISTRATION; RODNEY SCOTT, COMMISSIONER OF THE U.S. CUSTOMS AND BORDER PROTECTION; AND JOHN DOES 1-10, | § § § § § § § § § § § § § § § § | |
| *Defendants*. | § § | |

## PLAINTIFFS' ORIGINAL COMPLAINT AND REQUEST FOR DECLARATORY RELIEF AND TEMPORARY AND PERMANENT INJUNCTION

## I.    PARTIES

1.    Plaintiff **PACHAMAMA SANCTUARY** (the "Sanctuary" or "Plaintiff") is a Maine non-profit local independent church, having its principal office located in Cumberland County, Maine.

2.    Plaintiff **DEREK JANUSZEWSKI** ("Plaintiff" or "Mr. Januszewski," and together with the Sanctuary, "Plaintiffs") is an individual residing in Cumberland County, Maine, and a member and spiritual leader of the Church.

3.    Defendant **TODD BLANCHE** ("Attorney General" or "Defendant") is sued in his official capacity as the Attorney General of the United States and the Chief Law Enforcement Officer of the United States. The principal place of business of the Attorney General is in Washington, D.C.

4.    Defendant **MARKWAYNE MULLIN** ("Mullin" or "Defendant") is sued in his official capacity as the Secretary of the Department of Homeland Security ("DHS"). The principal place of business of the Department of Homeland Security is in Washington, D.C.

5.    Defendant **TERRANCE COLE** ("Cole" or "Defendant") is sued in his official capacity as acting Administrator of the Drug Enforcement Administration ("DEA"). The principal place of business of the Drug Enforcement Administration is in Washington, D.C.

6.    Defendant, **RODNEY SCOTT** ("Scott" or "Defendant," together with Attorney General, Mullin, Cole, "Defendants") is sued in his official capacity as acting Commissioner of Customs and Border Protection ("CBP"). The principal place of business of Customs and Border Protection is in Washington, D.C.

## II.    JURISDICTION AND VENUE

7.      The Court has jurisdiction over this case pursuant to 28 U.S.C. §§ 1331, 1343(3)-(4), because the case arises under the Constitution, laws, and treaties of the United States and seeks to redress the deprivation of rights, privileges, and immunities secured to Plaintiffs by the First and Fifth Amendments to the Constitution and the Federal Statutes of the United States.

8.      This Court also has authority pursuant to the federal Religious Freedom Restoration Act 42 U.S.C. § 2000bb-1(c) (hereinafter, "RFRA"), as Plaintiffs' sincere religious exercise of sacramentally consuming Ayahuasca, a sacred South American indigenous brew consisting of minute amounts of Dimethyltryptamine (hereinafter, "DMT"), a Schedule 1 substance, has been and continues to be substantially burdened by the actions of Defendants and as such, this court has jurisdiction over the proceedings and Plaintiffs may obtain appropriate relief against the Government. No exhaustion of administrative remedies is required in this case.[1]

9.      This Court has authority pursuant to 28 U.S.C. §§ 22201 - 02, to grant declaratory relief and to issue preliminary and permanent injunctions.

10.     This Court further has authority under 5 U.S.C. § 702 to compel agency action unlawfully withheld or unreasonably delayed, and to set aside an agency's acts or failures to act that are: contrary to constitutional right, privilege or immunity; in excess of statutory jurisdiction, authority or limitations; or carried on without the procedure required by law.

11.     Venue is proper under 28 U.S.C. § 1391(e)(1) against the personally named Defendants, all officers of agencies of the United States acting in their official and/or individual

---

[1] While the DEA has unofficially and unconstitutionally attempted to regulate the free exercise rights of Ayahuasca and other entheogen-based religious practitioners through promulgating its 2009 "Guidance Regarding Petitions for Religious Exemption from the Controlled Substances Act Pursuant to the Religious Freedom and Restoration Act," this Guidance was promulgated without compliance with the Administrative Procedures Act, lacks an enabling statute, and subverts the clear jurisdictional mandate for claims or defenses arising under the Religious Freedom Restoration Act ("judicial proceedings"), as contained in 42 U.S.C. § 2000bb-1(c). Additionally, the DEA's Guidance Document suffers from numerous constitutional and statutory deficiencies. As such, the Guidance Document creates no administrative exhaustion requirements which would, in any way, preempt Plaintiffs' claims under RFRA or the Constitution, as asserted herein.

capacities, because Plaintiff, Pachamama Sanctuary, is a Maine non-profit local independent church with its principal office being in Cumberland County, Maine. Plaintiff, Januszewski is also domiciled in Cumberland County, Maine.

## BACKGROUND

12.    Plaintiff, Pachama Sanctuary, is a Maine non-profit religious local independent church officially founded in New Hampshire in approximately February 2019. The Sanctuary's primary religious practice is centered around the sacramental consumption of Ayahuasca, a sacred shamanic brew used for thousands of years in South America, which contains small to trace amounts of Dimethyltryptamine ("DMT"), a Schedule I substance under the federal Controlled Substances Act.

13.    Plaintiff, Derek Januszewski, an American citizen and resident of Maine, is the spiritual leader of the Sanctuary.

14.    Mr. Januszewski began his spiritual journey with Ayahuasca approximately nine (9) years ago. Beginning in 2017, Mr. Januszewski began attending Ayahuasca ceremonies at various Ayahuasca churches and various ayahuasca-based religious groups in the United States. Shortly after beginning his spiritual journey with Ayahuasca, Mr. Januszewski began volunteering to help, oversee, and monitor the safety of ceremonial participants during Ayahuasca ceremonies.

15.    After approximately two years volunteering and learning to conduct safe and sacred Ayahuasca ceremonies, Mr. Januszewski felt spiritually called to establish his own Ayahuasca church. Accordingly, he founded Pachama Sanctuary in New Hampshire.

16.    From 2019 through present, Mr. Januszewski has served as founder and spiritual leader of the Sanctuary, coordinating and overseeing Ayahuasca ceremonies two to three times per month. Because the Sanctuary's beliefs and practices are substantially congruent to those of

ancient South American indigenous religious traditions, Mr. Januszewski hires various South American Ayahuasca facilitators to serve the Sacrament at the Sanctuary's ceremonies.

17.     In approximately 2024, Mr. Januszewski relocated the Sanctuary to Casco, Maine, where its headquarters and ceremony property are now located. On or about January 22, 2025, the Sanctuary registered as a non-profit local independent church with the Secretary of State for the State of Maine. In addition to Maine, Plaintiffs are moving to expand their religious offerings to the State of Florida.

18.     The Sanctuary and its members are sincere religious practitioners and consume Ayahuasca as the primary means through which they facilitate direct communion with the Divine, as well as effectuating personal healing and spiritual awakening. These traditionally religious processes, initiated through the sacramental consumption of Ayahuasca, provide ceremonial participants and members with direction and guidance on ultimate, general, and specific life questions. Post-ceremony, members gather to discuss their experiences and how they may apply their Divine revelations to improve their life and serve their communities.

19.     The Sanctuary's sacred Ayahuasca ceremonies, typically occur two to three times per month and exclusively within a tightly circumscribed and closely monitored setting, following the traditional practices of the various South American Shamans who facilitate the ceremonies on behalf of the Sanctuary. For the Sanctuary and its members, consuming Ayahuasca outside of these tightly circumscribed and closely monitored ceremonies is considered highly disrespectful to the Sacrament and ultimately sacrilegious. Access to Ayahuasca by and through the Sanctuary, is strictly limited to the sincere religious context provided by the Sanctuary's ceremonies.

20.     The Sanctuary's sacred ceremonies begin with prayers and protection rituals, including the use of mapacho (sacred tobacco) for cleansing and energetic alignment. Participants

are seated or lying down in a harmonious setting intended to promote safety, healing, stillness, and inward focus. The Sacrament is administered on an individual basis, with careful attention given to each person's preparation, experience level, and spiritual intention.

21.    A central component of the Sanctuary's sacred ceremonies is the singing of icaros, which are sacred songs the Shamans receive directly from the plants. These icaros are not memorized or pre-recorded; they are sung live in the moment, intuitively directed to specific individuals or the group, depending on the energetic needs of the space.

22.    Ceremonies include extended periods of silence, prayer, and energetic healing, supported by Shamans trained in indigenous methods. The entire space is spiritually protected, and participants follow specific guidelines before and after ceremony, including diet restrictions, to maximize safety and spiritual clarity.

23.     After the ceremony, integration support is offered to help participants process and embody their experience in a grounded and meaningful way. Every part of the ceremony is approached with deep reverence, honoring the sacredness of the medicine and the ancestral wisdom it carries.

24.    Ayahuasca is a brew consisting primarily of two different plant components, the Banisteriopsis Cappi vine (the Ayahuasca vine), which contains beta-carbolines that act as a monoamine oxidase inhibitor, and Psychotria Viridis (Chacruna); both of which are native to the Amazon rainforest in South America.

25.    Mr. Januszewski, as the founder and spiritual leader of the Sanctuary, personally brews the Ayahuasca sacrament for its ceremonies. The brewing process employed by Mr. Januszewski is a sacred and spiritual process which requires singing of icaros and cleansing of the brew with mapacho. This process both cleanses and tunes the Ayahuasca's energy. Plaintiffs'

believe this process empowers the Ayahuasca to effectuate deep and profound religious experiences in those who consume it.

26.     The beta carbolines from the ayahuasca vine allow DMT's visionary effects to occur by suppressing monoamine oxidase enzymes in the digestive system that otherwise would break down the DMT. The mixture of the DMT containing Chacruna with the monoamine oxidase inhibitor contained in the Ayahuasca vine, allows for the sacred brew to elicit primary religious, mystical, and visionary experiences in those who partake in the Sanctuary's sacred ceremonies.

27.     Ingestion of this unique combination of plants allows DMT to reach the brain in levels sufficient to significantly alter consciousness. However, as noted above, the ingestion of Ayahuasca often leads to less desirable and emetic side effects, like excessive vomiting.

28.     Those who consume Ayahuasca in the context of a sacred religious ceremony may experience anxiety and discomfort. It has been found that in about a third of users, Ayahuasca initially causes nausea and vomiting, and less frequently diarrhea. However, the Sanctuary and its members view the Ayahuasca-induced vomiting and diarrhea as a beneficial purging or cleansing. Federal courts have routinely noted that these emetic effects prevent abuse of Ayahuasca.

29.     For the Sanctuary and its members, any consumption of Ayahuasca outside of the Sanctuary's tightly circumscribed and sacred ceremonial context is considered sacrilegious. The psychoactive effects of Ayahuasca begin about 20-30 minutes after ingestion, and last for 1-2 hours and the body eliminates the DMT from the Ayahuasca in approximately 3-4 hours.

30.     Those who consume Ayahuasca may experience visual effects, although not true hallucinations (i.e. the person is aware that the effect is not real); alterations in perception of time and space; and intense emotions, including euphoria. Consistently, Ayahuasca produces profound insights into ultimate matters/questions and insight into specific life issues or challenges the user

may be experiencing at time of consumption.[2] This characteristic of the Ayahuasca experience renders the sacred brew particularly effective as a religious sacrament and effective at initiating spiritual growth and fostering group fellowship.

31.    Ayahuasca is not known to ever be used recreationally, as it causes unpleasant side effects and other, more readily available pharmacological equivalents, without the emetic or negative side effects, have been observed by experts and other federal courts.[3] When dispensed after appropriate medical screening and in the presence of those trained in emergency medical response, Ayahuasca is known to be physiologically safe, and the government has never successfully demonstrated, as required under RFRA, that any potential health risks posed by the consumption of Ayahuasca rises to the level of a compelling governmental interest.[4]

32.    Ayahuasca, while generally safe, can cause adverse reactions in people who take certain medications and have certain medical conditions. However, courts have found that proper screening of potential ceremony participants greatly increases the safety of ayahuasca and cuts against the government's compelling interest in health and safety.[5]

33.    The Sanctuary, through Mr. Januszewski and its staff, employs a detailed screening process when approached by a prospective member. The screening process is tailored to elicit information related to the  individual's current medical condition and medications, as well as their past medical history, and to gauge their sincerity and intentions for desiring to commune in sacred ceremony with the Sanctuary's community.

---

[2] *See Church of the Holy Light of Queen v. Mukasey*, 615 F. Supp. 2d 1210 (D. Or. 2009), vacated on grounds related to scope of injunctive relief by *Church of Holy Light of Queen v. Holder*, 443 F. App'x 302 (9th Cir. 2011).
[3] *See Id.*.
[4] *See Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418 (2006); *Church of the Holy Light of Queen*, 615 F. Supp. 2d 1210; 42 U.S.C. § 2000bb-1.
[5] See *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418 (2006) and *Church of the Holy Light of Queen*, 615 F. Supp. 2d 1210.

34.     In providing a sacred, safe, and circumscribed set and setting for the consumption of Ayahuasca, the Sanctuary employs enough helpers and assistants to ensure that all members are being carefully monitored and guarded as they experience their spiritual/religious process.

35.     The Sanctuary, by and through Mr. Januszewski, stores and maintains the Sanctuary's sacraments in a secret and secure location, behind three locks. Additionally, only Mr. Januszewski and his ceremonial assistants are allowed to possess and/or dispense the Sanctuary's sacraments.

36.     Plaintiffs always maintain a meticulous accounting of the sacrament in their possession and have never dispensed or distributed sacraments outside of the Sanctuary's sacred and tightly circumscribed religious ceremonies. Because the plants used to prepare Ayahuasca do not grow naturally in the United States, Mr. Januszewski is forced to order the plant components from South America and brew the ceremonial Ayahuasca at the Sanctuary's Maine facility.

37.     From approximately 2020 through September 2022, unknown agents of Customs and Border Protection and/or Department of Homeland Security unlawfully seized packages containing plant components destined for the Sanctuary. These plant materials were intended to be used for brewing the Sanctuary's Ayahuasca. The seizures of the Sanctuary's sacramental plant materials, have caused and continue to cause a substantial burden upon the Sanctuary and its members' sincere religious practice.

38.     Despite having parcels of the Church's sacramental materials seized, neither CBP or DHS have ever allowed Plaintiffs to assert their right to the materials under RFRA and the First Amendment. Thereby failing to provide them with due process and causing a substantial burden upon the Sanctuary's religious practices. Prior to the filing of this Complaint, Plaintiffs have never had an opportunity to formally contest the seizure of their sacraments.

39.     From approximately the Fall of 2021 to October of 2023, agents from the Drug Enforcement Administration and Department of Justice personally visited the Sanctuary on two separate occasions to speak with Mr. Januszewski about the packages of seized materials. During these conversations, and other discussions between undersigned counsel, the Maine U.S. Attorney's Office, and the DEA, Mr. Januszewski has been encouraged to assert his rights under RFRA.

40.     Congruent with federal law, and at the behest of federal officials in Maine, Plaintiffs file this lawsuit as a means of receiving recognition by this Honorable Court, of the Sanctuary's rights under both RFRA and the First Amendment, to import, manufacture, and distribute Ayahuasca, subject to reasonable restrictions and guidance by the Court, to its church members solely within the context of its highly circumscribed and meticulously monitored religious ceremonies.

41.     Plaintiffs are currently practicing their religion, consuming Ayahuasca in sacred ceremony, and they intend to continue indefinitely into the future as the consumption of Ayahuasca is the central practice of their religion.

## V.  CAUSES OF ACTION

### COUNT ONE: CLAIMS PURSUANT TO THE RELIGIOUS FREEDOM AND RESTORATION ACT[6]

42.     Plaintiffs incorporate the allegations contained in paragraphs 1 -41 as if copied here verbatim.

43.     Under the federal Religious Freedom and Restoration Act, 42 U.S.C. §§ 2000bb et seq., claimants must first show, by a preponderance of the evidence, that they have engaged in a

---

[6] 42 U.S.C. §§ 2000bb-2000bb-4.

sincere "exercise of religion" which has been substantially burdened by the government.[7] Once this preliminary showing has been made, the burden shifts to the government to demonstrate that application of the burden to the claimant is in furtherance of compelling governmental interest and is the least restrictive means of furthering that said interest.[8]

44.    At the outset, Plaintiffs note that, on two other occasions, the government has been unable to prove its burden of showing a compelling governmental interest in substantially burdening the sincere religious consumption of Ayahuasca by two other ayahuasca-based religion in the United States.[9]

45.    The material facts in this case are substantially similar in all material respects to those confronted by the federal courts in the *UDV* and *Santo Daime* cases.[10] To date, there has not been a single instance of harm or injury occasioned on Sanctuary members for participating in any of the Sanctuary's sacred ceremonies. No sacraments have been diverted to purposes other than use in religious ceremony.

46.    Plaintiff, Mr. Januszewski, individually and as the spiritual leader of Pachamama Sanctuary, is a sincere religious practitioner who has engaged in the sacramental consumption of Ayahuasca for approximately nine (9) years.

47.    Plaintiff, Pachamama Sanctuary, is a Maine religious non-profit entity and organized collective of sincere religious practitioners whose primary means of communion with the Divine occurs through their highly circumscribed and ritualistic consumption of Ayahuasca. The religious traditions being observed and adhered by the Sanctuary and its members, date back

---

[7] See 42 U.S.C. § 2000bb-1(a)-(b).

[8] Id.

[9] See *Gonzales v. O Centro Espirita Beneficiente Uniao do Vegetal*, 546 U.S. 418 (2006) and *Church of the Holy Light of Queen*, 615 F. Supp. 2d 1210.

[10] See *Gonzales v. O Centro Espirita Beneficiente Uniao do Vegetal*, 546 U.S. 418 (2006) and *Church of the Holy Light of Queen*, 615 F. Supp. 2d 1210.

thousands of years and originate from various indigenous religious traditions of the South American Amazon rainforest.

48.    Plaintiffs and the members of the Sanctuary are sincere religious practitioners. Plaintiffs' sincere religious practice of consuming Ayahuasca have been substantially burdened by the government's seizure of their sacrament; and by the constant threat of prosecution under the Controlled Substances Act, existing by virtue of DMT, a Schedule I controlled substance, in the Sanctuary's Ayahuasca sacrament. Similarly-situated religious practitioners, in the United States, are currently being prosecuted for importing Ayahuasca for religious purposes.[11]

49.    Under the facts of this case, and consistent with prior federal court rulings on the issues, enforcing the criminal penalty provisions of the Controlled Substances Act against Plaintiffs, or preventing them from importing, manufacturing, and distributing Ayahuasca for religious purposes does not further a compelling governmental interest. Moreover, to the extent such an interest is implicated by Plaintiffs' Ayahuasca ceremonies, there exists less restrictive means of protecting the Government's interests.

50.    In other federal cases involving similarly-situated religious practitioners, reasonable guidelines for importation, storage, accounting, distribution, and periodic testing of Ayahuasca have been found sufficient to further the Government's interests. To date, said accommodations under the Controlled Substances Act have been successful in allowing similarly-situated religious groups to legally consume Ayahuasca within the United States, while sufficiently protecting public health and safety.

51.    Plaintiffs respectfully request the Court award them attorney fees and costs associated with the prosecution of their Religious Freedom and Restoration Act claims.

---

[11] See *United States v. Codi*, Case No. 2:24-cr-00161 RDP, 2026 WL 267024 (N.D. Ala. 2026).

Wherefore, Plaintiffs seek declaratory and injunctive relief against Defendants as follows:

A Declaratory Judgment that Defendant's actions described in this Complaint, including the interdiction and destruction of Plaintiffs' sacramental materials and the continuing threat of seizure, criminal prosecution, and forfeiture of property of all Plaintiffs and members of Pachamama Sanctuary who wish to partake of Ayahuasca, their sacrament, violates the federal Religious Freedom and Restoration Act.[12]

A permanent injunction requiring Defendants to permit Plaintiffs' importation, use, preparation of, and distribution of Sacrament to members of the Sanctuary, consistent with the Sanctuary's doctrines and practices, and enjoining Defendants from arresting, prosecuting, or threatening Plaintiffs and members of the Sanctuary with arrest, prosecution, and/or imprisonment for importing, distributing, and ingesting sacrament in the rituals and observances of the Sanctuary.

An Order awarding Plaintiffs' attorneys' fees, costs, and expenses pursuant to the Civil Rights Attorneys Fees Awards Act of 1976.[13]

## COUNT TWO: VIOLATIONS OF FIRST AMENDMENT FREE EXERCISE OF RELIGION

52. Plaintiffs incorporate the allegations contained in paragraphs 1-51 as if copied here verbatim.

53. The actions of Defendants in confiscating Plaintiffs' sacramental materials including the interdiction and destruction of Plaintiffs' plant materials and the continuing threat of seizure, criminal prosecution, and forfeiture of property of Plaintiffs and members of the Church, who have worshipped and intend to continue to worship according to the central tenets of their religion by their use of the Sanctuary's Ayahuasca, substantially burdens Plaintiffs' right to the free

---

[12] 42 U.S.C. §§ 2000bb-2000bb(4) "Religious Freedom and Restoration Act of 1993."
[13] See 42 U.S.C. §§ 2000bb-1(4)(a).

exercise of their religion, their right to expressive conduct, and their right to association, all in violation of their rights under the Free Exercise Clause of the First Amendment to the United States Constitution and all causing irreparable harm to Plaintiffs.[14]

## COUNT THREE: VIOLATIONS OF FIRST AMENDMENT FREE ESTABLISHMENT OF RELIGION

54. Plaintiffs incorporate the allegations contained in paragraphs 1-53 as if copied here verbatim.

55. Plaintiffs are similarly situated to the UDV and Santo Daime religious sects in their sacramental use of Ayahuasca, which Defendants consider to be a Schedule 1 controlled substance under the Controlled Substance Act. Defendants have accommodated the UDV and no longer seek to ban the importation, distribution, and ingestion by its congregations, and Defendants are enjoined from prohibiting the Santo Dame's importation, storage, distribution, and use of the Daime tea for that church's religious ceremonies. Defendants, however, continue to refuse to accommodate Plaintiffs' sincere, sacramental use of the same sacred tea.

56. Defendants' decision to prefer members of other religions in their use of Ayahuasca for religious purposes, and Defendants' lack of interference with the religious use of Ayahuasca by other religious sects, while denying the same protection to Plaintiffs, constitutes an Establishment of Religion in violation of Plaintiffs' First Amendment Rights.

## COUNT FOUR: VIOLATIONS OF FIFTH AMENDMENT RIGHT TO SUBSTANTIATIVE DUE PROCESS

57. Plaintiffs incorporate the allegations contained in paragraphs 1-56 as if copied here verbatim.

---

[14] See *Tandon v. Newsom*, 141 S.Ct. 1294, 1296 (2021) (stating that citizens are irreparably harmed by the loss of free exercise rights even for "minimal periods of time").

58.     The actions of Defendants in seizing the Sanctuary's sacrament and the continuing threats to confiscate the Sanctuary's sacramental materials and to prosecute Plaintiffs and other members of the Sanctuary who in the future attempt to worship according to the central tenets of their religion, violate Plaintiffs' right to worship according to the dictates of their own conscience and deprive them of their liberty in violation of the Due Process Clause of the Fifth Amendment.

### COUNT FIVE: VIOLATIONS OF FIFTH AMENDMENT RIGHT TO EQUAL PROTECTION OF LAWS

59.     Plaintiffs incorporate the allegations contained in paragraphs 1-58 as if copied here verbatim.

60.     Plaintiffs are similarly situated to the UDV and Santo Daime religious sects in their sacramental use of Ayahuasca, which Defendants consider to be a Schedule 1 controlled substance under the Controlled Substance Act. Defendants have accommodated the UDV and no longer seek to ban the importation, distribution, and ingestion by its congregations, and Defendants are enjoined from prohibiting the Santo Dame's importation, storage, distribution, and use of the Daime tea for that church's religious ceremonies. Defendants, however, continue to refuse to accommodate Plaintiffs' sincere, sacramental use of the same sacred tea. Defendants must also accommodate Plaintiffs' sincere, sacramental use of the Sanctuary's Ayahuasca. Such denial of the use of Ayahuasca as a sacrament in the rituals and ceremonies of the Sanctuary and its members deny them equal protection of the laws in violation of the Due Process Clause of the Fifth Amendment because Plaintiffs are similar situated to other churches that are not denied such rights.

### VI.     **PRAYER**

WHEREFORE, PREMISES CONSIDERED, Plaintiffs seek declaratory, and injunctive relief as follows:

A.    A Declaratory Judgment that Defendants' actions described in this Complaint, including the interdiction and destruction of Plaintiffs' sacramental materials and the continuing threat of seizure, criminal prosecution, and forfeiture of property of the Sanctuary and its membership of the Sanctuary who wish to partake of its sacred Ayahuasca, their Holy sacrament, violates 42 U.S.C. § 2000bb – 2000bb-4, the Religious Freedom Restoration Act of 1993.

B.    A Declaratory Judgment that the actions described in this Complaint violated Plaintiffs' right to freedom of religion under the First Amendment of the Constitution of the United States.

C.    A Declaratory Judgment that Defendants' actions in treating Plaintiffs herein differently than UDV and Santo Daime members violate the equal protection of the laws, as guaranteed by the Due Process Clause of the Fifth Amendment of the Constitution of the United States.

D.    A Declaratory Judgment that Defendants' actions described in this Complaint, including the interdiction and destruction of Plaintiffs' sacramental materials and the continuing threat of seizure, criminal prosecution, and forfeiture of property of the Sanctuary and its membership of the Sanctuary who wish to partake of its Ayahuasca, their Holy sacraments, as essential components of their religious beliefs and practices of worship, violates Plaintiffs' rights to substantive and procedural due process under the Due Process Clause of the Fifth Amendment of the Constitution of the United States.

E.    A permanent injunction requiring Defendants to permit Plaintiffs' importation, use, preparation of, and distribution to members of the Sanctuary the sacramental Ayahuasca, consistent with the Sanctuary's doctrine and practices, and enjoining Defendants from

arresting, prosecuting, or threatening Plaintiffs and members of the Sanctuary with arrest, prosecution, and/or imprisonment for importing, distributing, and ingesting sacraments in the rituals and religious observance of the Sanctuary.

F.    An Order awarding Plaintiffs' attorneys' fees, costs, and expenses pursuant to the Equal Access to Justice Act, 5 U.S.C. § 504 and the Civil Rights Attorneys Fees Awards Act of 1976, 42 U.S.C. § 1988.

Dated: May 19, 2026                    Respectfully submitted,


/s/ *Alexander J. Mihalov*
Alexander J. Mihalov, Esq.
Me. Bar No. # 6602
**PERKINS THOMPSON, PA**
200 Middle Street,
PO Box 426
Portland, ME 04112
(207) 774-2635
amihalov@perkinsthompson.com


and


George "Greg" Lake, Esq., (*Pro Hac Vice Admission Anticipated*)
TX Bar No. 24081565
**THE LAW OFFICE OF GEORGE G. LAKE**
411 E. Merritt
Marshall, Texas 75670
Email: george.lake.la@gmail.com
Phone: (225) 368-7108

**ATTORNEYS, FOR PLAINTIFFS, PACHAMANA SANCTUARYAND DEREK JANUSZEWSKI**

{P2627782.1}}}                                        17